ST. JOSEPH'S HOSPITAL, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Defendant.

Civ. A. No. 76–1558.

United States District Court,
District of Columbia.

Feb. 25, 1977.

Thomas C. Fox, Joel M. Hamme, Washington, D.C., W. Thomas Berriman, King of Prussia, Pa., for plaintiff.

John R. Dugan, Asst. U.S. Atty., Washington, D.C., for defendant.

MEMORANDUM AND ORDER

GESELL, District Judge.

In June 1972 plaintiff, St. Joseph's Hospital, suffered extensive physical damage as the result of a flood. To replace its lost or destroyed facilities the Hospital applied for funds under the Disaster Relief Act of 1970 (P.L. 91–606), as amended (1971).[1] The application was conditionally approved, and the Hospital received over three million dollars with which it has rebuilt and replaced its facilities. It also sought reimbursement for its capital losses under the Medicare Act. 42 U.S.C. §§ 1395 *et seq.* Reimbursement was denied, and it is this ruling which plaintiff seeks to overturn. 42 U.S.C. § 1395*oo*(f)(1). This matter comes before the Court on cross-motions for summary judgment. The administrative record was reviewed and full oral argument was heard.

Under the Medicare Act, and regulations promulgated thereunder, hospitals providing services to medicare beneficiaries ("providers") are reimbursed for the necessary costs of such services. Reimbursement is often carried out by private organizations, acting as intermediaries, which have experience with such tasks. *See* 42 U.S.C. § 1395h. To be reimbursed providers must file cost reports with the intermediaries.

---

1. The Disaster Relief Act was repealed and rewritten by P.L. 93–288 (1974), 42 U.S.C. § 5155, but that does not affect this case.

20 CFR 405.453(f). Under these provisions plaintiff included among its 1973 costs $43,-185.00 in flood losses.[2] This amount was disallowed by the intermediary, and by a Provider Reimbursement Review Board. The Review Board decision was not altered by the Secretary of HEW and constitutes final agency action. 42 U.S.C. § 1395oo. Plaintiff claims this denial was arbitrary, capricious and unlawful. *See* 5 U.S.C. § 706(2).

The Medicare Act only allows reimbursement for actual costs, as determined by the Secretary of HEW, incurred in providing services to medicare recipients. 42 U.S.C. § 1395x(v)(1)(A). Under the Secretary's regulations actual costs include depreciation expenses on capital assets. 20 CFR 405.-416–405.418. This is because it is necessary to provide capital for replacement of facilities after they become unusable, and because the facilities age while providing medicare services. 20 CFR 405.418(b).

It is admitted that at the time no regulation covered depreciation on casualty losses where federal disaster funds were made available. Nevertheless, the Hospital claims that it is entitled to depreciation on the assets lost in the flood, *i. e.*, its casualty loss. It asserts that this loss is an "actual cost" under the generally accepted accounting principles which HEW requires that it use to keep its books. The Hospital also maintains that in what it perceives to be a similar situation, where hospital facilities are abandoned, providers are entitled to recoup depreciation costs.[3]

The Secretary did not act arbitrarily or violate the law by determining, in effect, that depreciation on these casualty losses was not an actual cost of providing medicare service. The lost capital assets obviously were not exhausted in the provision of service to medicare beneficiaries. Furthermore, since the Hospital was rebuilt with other federal funds, medicare money was not needed to insure replacement of vital facilities, particularly where the Hospital is now receiving reimbursement for depreciation on its new capital assets. That these losses may be general costs of the Hospital is irrelevant since the statute reimburses only what the Secretary determines are the necessary costs of medicare services. Nor was it arbitrary for the Secretary to treat this case differently than he does the abandonment of unusable facilities. Where hospital facilities are abandoned, in reality they have been completely consumed during the provision of medicare services. Further, medicare money may be necessary to provide new facilities. That is clearly not the case here.

The defendant's motion for summary judgment is granted, plaintiff's motion for summary judgment is denied, and the complaint is dismissed.

SO ORDERED.

---

2. The loss was reported as a deferred charge. The remainder of the capital asset losses, $1,074,233 would be reported in succeeding years.

3. Plaintiff also claimed that another hospital hit by disaster received both disaster funds and medicare funds. But defendant's uncontested statement of material facts indicates the medicare funds were allocated first, and on the record it is impossible to determine the final outcome of that situation. At oral argument counsel indicated that the matter was still pending administratively. Thus it cannot affect the outcome of this litigation.